UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANGELO JOSEPH GASPARRI

        Plaintiff,                                      Civil Action No.: 9:15-cv-81400-KAM

    v.

ERIC J. ALMAZAN,
PI KAPPA PHI FRATERNITY,
JUSTIN ANGOTTI, and
SCOTT LEIGHTY

        Defendant.

_____/

**PLAINTIFF'S OPPOSITION TO
DEFENDANT ERIC J. ALMAZAN'S MOTION TO DISMISS**

        Plaintiff Angelo Joseph Gasparri, by and through his undersigned Counsel, responds in opposition to Defendant Eric J. Almazan's ("Almazan") motion to dismiss various elements and counts of the Plaintiff's complaint. For the reasons discussed below, the Plaintiff requests this Court to deny Defendant Almazan's motion to dismiss in its entirety.

**I.    INTRODUCTION & STATEMENT OF FACTS**

    1.    At all times material to this cause, Defendant Almazan was a one time member of the Pi Kappa Phi Fraternity Associate Chapter on the campus of Florida Atlantic University ("FAU"). (Comp. ¶ 3).

    2.    At all times material to this cause, Defendant Almazan withdrew from FAU and was not living in the state of Florida and is now is domiciled in and a resident of Missouri. (Comp. ¶ 8).

    3.    On February 24, 2015, Defendant Almazan received an automated email from yourchapter@omegafi.com as a reminder of an outstanding balance of dues owed to the fraternity Pi Kappa Phi. (Comp. ¶ 52; Exhibit 1).

4. A few hours later on the same day, Defendant Almazan responded to Plaintiff A.J. and informed Plaintiff of the following: "I am currently in the process of disputing this bill with omega fi. I was never initiated into the fraternity and withdrew from the University." (Comp. ¶ 51; Exhibit 2).

5. Defendant Almazan did not, at this time, indicate to anyone from the Pi Kappa Phi, including to *A.J. or to the treasurer Shorey*, regarding allegations of hazing. (Comp. ¶ 51; Exhibits 2 and 8). As evidenced by the following statements from the sworn affidavits from other members who were present at the event in September and attested that they knew and interacted with Almazan, that Almazan *did not express that he experienced any "hazing" at or after the bid party*:

- Kyle Muir: "[A]s warden, I routinely met with fraternity's new members (approximately on a weekly basis), including Mr. Almazan, and at no point did Mr. Almazan ever express any negative feelings about the fraternity, any events, or A.J. In fact, subsequent to the "bid party" at one of our weekly meetings, Mr. Almazan expressed an interest in running for a position on the executive board." (Exhibit 8, page 12, "Muir Affidavit").

- Kevyn De La Cruz: "I know Mr. Almazan personally, and I am the person who introduced him to the fraternity. Subsequent to the September 13, 2014 "bid party," I spoke to Mr. Almazan on numerous occasions. In fact we lived in the same building at the time. At no point during our many conversations after the "bid party" did Mr. Almazan express any negative feelings towards the fraternity or A.J., nor did he discuss any of the event that he now alleges occurred on September 13, 2014." (Exhibit 8, page 20, "De La Cruz Affidavit").

- Nicholas Wingard: "I carpooled with Mr. Almazan to the fraternity event subsequent to the "bid party" and at no time during my interactions with him did he ever express any negative feelings towards the fraternity or A.J. Specifically Mr. Almazan never expressed any complaints or grievances relating to the September 13, 2014 "bid party." (Exhibit 8, page 24, "Wingard Affidavit").

- Josh Shorey: [D]uring this period of time, I considered Mr. Almazan to be a friend and I hung out with him on numerous occasions after the September 13, 2014 "bid party." Specifically we carpooled to the FAU v. FIU football game on October 2, 2014, and at no point did Mr. Almazan express any negative or damaging feelings towards the fraternity or A.J. during that time or any other occasion." (Exhibit 8, page 28, "Shorey Affidavit").

- Aaron Sherman: "I have witnessed Mr. Almazan bring his own alcohol to numerous parties/events. Also I know with certainty that there were several "new members" who elected not to consume alcohol during the ceremony at the "bid party" and at no

2

time did they experience any form of retaliations or threats." (Exhibit 8, page 36, "Sherman Affidavit").

6. Defendant Almazan admits in his first responding email to receiving this bill for the dues that *he does not feel he should pay* and he is "currently disputing this bill […]."(Comp. ¶ 51; Exhibit 2).

7. Plaintiff then responded to Almazan with the following statement: "Unfortunately you were part of the organization for one semester and we still had to pay your insurance as well as other fees and expenses and for this reason you must still pay your dues for your tenure in the fraternity." (Comp. ¶ 52; Exhibit 2, page 3).

8. It was not until AFTER Plaintiff A.J., who was doing his job as Archon for Pi Kappa Phi to collect these dues, explained to Defendant Almazan why the dues were still owed, that Defendant Almazan reacted in his second responding email the following sarcastic and extortionate statement to Plaintiff A.J.: "*Unfortunately* I will contact the proper FAU officials to notify them of hazing "forcing all pledges to consume alcohol mixed with pre-workout)." (Comp. ¶53; Exhibit 2, page 2)(emphasis added).

9. Between February 24th and March 6, 2015, Almazan, with knowledge and express malice, made numerous false and defamatory statements about Plaintiff A.J. to FAU and Pi Kappa Phi.  (Comp. ¶¶ 58, 59).

10. These false accusations were made with the intent to harm Plaintiff included allegations of hazing at the party held at Harry's home with specific accusations of physical confinement and forced drinking, and that these allegations were knowingly made by Almazan without a factual basis and with awareness of the harm they would cause. (Comp. ¶ 62).

11. Plaintiff disputes the truth of the false accusations that any hazing activity took place in September 2014.  The Defendant's actions and statements were unsubstantiated and false and were directly aimed at Plaintiff A.J. a Florida resident, and Plaintiff A.J. incurred injuries with the state of Florida, has been defamed, and suffered significant and irreparable harm to his person and profession.

12. On October 9, 2015, the Plaintiff filed a multi count complaint against Defendant Almazan requesting relief for 1) Defamation and 2) Intentional Infliction of Emotional Distress.

13. Plaintiff has also submitted, as exhibits to this Court, testimony, sworn under oath, from eleven affiants that *no hazing or other similar activity that could be even remotely*

3

*construed as forcing anyone to drink, took place at the party* on September 2014. (Comp. ¶¶ 34, 36, 41; Exhibit 8).

14. On November 12, 2015, Defendant Almazan filed the instant Motion to Dismiss seeking dismissal of the claims against him on six grounds; 1) This Court's lack of personal jurisdiction over Defendant Almazan; 2) Plaintiff's Claim of Defamation is legally insufficient; 3) The alleged defamatory statements were Defendant's opinion and, therefore are not actionable; 4) Defendant enjoys a qualified privilege; 5) failure to properly plead a claim for Intentional Infliction of Emotional Distress, and; 6) the Plaintiff lacks standing to bring this action against Pi Kappa Psi and has not named the University as a Defendant. (Almazan MTD Doc. 14).

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a Court must determine whether a Plaintiff sets forth sufficient factual allegations to establish a claim upon which relief may be granted. In evaluating whether Plaintiffs have stated a claim, the Court must determine whether the pleading satisfies Fed. R. Civ. P. 8(a)(2). To satisfy the pleading standard of Rule 8(a)(2), a Complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face.[1] The Court is required to construe the complaint liberally, assuming all facts contained within the allegations are true, and drawing reasonable inferences in favor of the Plaintiff.[2] Further, in ruling on a Motion to Dismiss under Rule 12(b)(6), the Court must construe the Complaint in the light most favorable to the Plaintiff and accept all well-pled factual allegations as true.[3]

A complaint should never be dismissed because the court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein.[4] Finally, a Motion to Dismiss is not a forum to determine either the veracity of the facts, nor is it a forum to determine if the Defendants have presented a sufficient defense.[5]

---

[1] *Ashcroft v. Igbal*, 556 U.S. 662 (2009).
[2] *Iqbal*, at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, *556-557* (2007));*Resnick v. AvMed, Inc*., 693 F.3d 1317, 1325-26 (11th Cir. 2012).
[3] See *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009).
[4] *Twombly, 550 U.S.* at 556-557.
[5] *Twombly,* at 679; *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002) ("The issue to be decided is not whether the plaintiff will ultimately prevail, but whether the [plaintiff] is entitled to offer evidence to support the claims").

In this case, Defendant raises no issues sufficient to warrant dismissal of any of the elements of the complaint. Defendant raises defenses that are not properly before this Court in a Motion to Dismiss and are better reserved for Defendant's answer and the preparation of his defense. The remainder of the document reviews Defendant's assertions in more details.

### III.  LEGAL ARGUMENT

#### A.  This Court has Personal Jurisdiction Over Defendant Almazan

Plaintiff has alleged various tort claims against Defendant who is a resident of Missouri. (Comp. ¶ 8). A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging sufficient facts in the complaint to make out a prima facie case of jurisdiction.[6] Where, the defendant ***does not*** submit evidence for the purpose of determining personal jurisdiction, the Court takes the factual allegations of the Complaint to be true.[7]

Defendant Almazan asserts the absence of this Court's personal jurisdiction under the Florida Long-Arm Statute and Due Process Clause because Almazan was not physically in the State of Florida when the tortious actions against Plaintiff, a Florida Resident, occurred. A determination as to personal jurisdiction requires this Court to make a two step analysis (1) of whether the Florida long-arm statute authorizes personal jurisdiction and (2) of whether the defendant possesses "minimum contacts" with the forum state sufficient to comport with "'traditional notions of fair play and substantial justice.'"[8]

##### 1.  Florida's Long Arm Statute

To determine personal jurisdiction, the Court first determines whether Defendant Almazan's activities satisfy the Florida long-arm statute, and, if so, whether the extension of jurisdiction comports with the due process requirements of the Fourteenth Amendment.[9]

Section 48.193(1)(b) of the Florida Long-Arm Statute permits jurisdiction over the

---

[6] *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (internal quotation marks and citation omitted).
[7] *Id.*
[8] *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166-67 (11th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).
[9] *Id.* at 1166.

5

nonresident defendant who commits a tort outside of the state that causes injury inside the state.[10] Defendant Almazan's physical presence is not required if the tort causes an injury in Florida.[11] "[T]elephonic, electronic, or written communications into Florida" provide a basis for jurisdiction *if the tort arises from the communications* and "depend[s] upon proof of either the existence or the content of any of the communications."[12]

Defendant Almazan asserts that and that he was not present in Florida at the time of the alleged defamatory communication, that Plaintiff "should have to prove the calls were initiated by Almazan and not other parties" and that "[e]-mails sent to the Fraternity in North Carolina would be insufficient to obtain jurisdiction[…]."[13]  Almazan points to *Acquardro v. Bergeron*, generally, for this proposition of Plaintiff's burden at this stage of the proceedings but misapplies the Court's analysis of contested personal jurisdiction over a defendant that committed the tortious act outside of Florida.[14]  The *Acquadro* Court explained the procedure for contesting personal jurisdiction for a defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts *must file affidavits in support of his position*, which Almazan has not done in this case.[15]   The *Acquadro* Court upheld the denial of the motions to dismiss based on the allegations in the complaint and reiterated its holding in *Wendt v. Horowitz* that any communication by any means *into* Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications.[16]

This Court's determination of whether certain acts constitute communications *into* Florida is straightforward when the case concerns "telephonic communications, written communications, or electronic communications in the form of e-mails or facsimiles, because those communications are directed *to reach a specific recipient in a specific forum*; in other words, it is clear that the nonresident defendant's communications were made into Florida."[17]

---

[10] *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999).
[11] *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla. 2002).
[12] *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1168 (quotations omitted).
[13] Almazan MTD Doc. 14, pp. 6-7.
[14] 851 So.2d 665 (Fla. 2003)
[15] *Id.*
[16] *Id.* at 671 (quoting *Wendt v. Horowitz* 822 So.2d 1252, 1260 Fla. 2003) ***"[I]n order to "commit a tortious act" in Florida, a defendant's physical presence is not required.*** Second, "committing a tortious act" in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications)(emphasis added).
[17] *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1208 (Fla. 2010)(emphasis added).

In this case the Plaintiff properly alleged that defamatory communication did occur by Defendant Almazan on or after the extortionate threatening email Almazan sent to Plaintiff A.J. Notably in Defendant Almazan's Motion to Dismiss on the grounds of personal jurisdiction, in the midst of his legal conclusions did not deny there was *no communication* into Florida.

> 2. *Personal Jurisdiction over Defendant Almazan Does Not Offend Due Process Because the Alleged Defamation was Intentionally and Purposefully Directed at and Injured a Resident of Florida, Therefore the Minimum Contacts Requirement is Met*

After examination of whether the exercise of jurisdiction would be appropriate under the Florida Long-Arm Statute this Court will examine:

> "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend `traditional notions of fair play and substantial justice.'"[18]

Jurisdiction may be constitutionally asserted over the nonresident defendant whenever he has by his own purposeful conduct created a "*substantial connection*" with the forum state.[19] The Supreme Court has made clear, however, that "[s]o long as it creates a `*substantial connection*' with the forum, even a *single act* can support jurisdiction."[20] In *Calder v. Jones*, the Supreme Court ruled that intentional torts such as the Plaintiff's allegations against Defendant Almazan of Defamation are "*such acts*", and may support this Court's exercise of personal jurisdiction over Defendant Almazan even though he alleges he has no other contacts with this forum.[21] "In other words, personal jurisdiction over defendants may be based on the `*effects*' of their conduct."[22] The *Calder* Court held that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."[23]

---

[18] *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005)(quotations omitted).
[19] *Licciardello v. Lovelady,* 544 F.3d 1280, 1284 (11th Cir. 2008)(quoting *Burger King,* 471 U.S. at 473-74, 105 S.Ct. 2174).
[20] *Id*. at 1286 (internal citations omitted).
[21] *Calder v. Jones, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).*
[22] *Calder,* 465 U.S. at, 789.
[23] *Id*. at 790, 104 S.Ct. 1482; Similarly, in *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770 at 776-77 (1984), decided the same day as *Calder*, the United States Supreme Court affirmed the exercise of jurisdiction over the nonresident defendant magazine alleged to have intentionally libeled the plaintiff in the forum and emphasized that states have a

Many courts have employed the *Calder* "effects" when the plaintiffs claim involves an intentional tort.[24] The defendant's connection with the forum in an intentional tort case "should be evaluated under the ***Calder 'effects' test***, rather than the contracts-oriented "minimum contacts" test."[25] The *Calder* effects test for personal jurisdiction is properly applied for a tort that is (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.[26]

In this case Defendant Almazan sent an extortionate email threatening reporting the Plaintiff in retaliation to having to pay his fraternity dues to Plaintiff in response to an email Plaintiff sent while doing his job and collecting the dues on behalf of the Fraternity. Defendant Almazan is alleged to have carried out these extortionate threats and made defamatory and false accusations about Plaintiff A.J. to multiple audiences. These false and defamatory accusations were aimed at Florida, as that is where FAU, the FAU Fraternity chapter, and Plaintiff are located. These false and defamatory accusations caused such harm to Plaintiff and Defendant Almazan knew or should have anticipated would be suffered by Plaintiff in this forum state.

Accordingly, Defendant Almazan cannot complain he is being haled into this Court.[27] Where Defendant Almazan's alleged tortious conduct was ***intentionally and purposefully directed at a resident of the forum,*** the minimum contacts requirement is met, and [Defendant Almazan] should anticipate being haled into [this] forum."[28]

Even where a defendant has purposefully established constitutionally significant contacts within the forum state, jurisdiction must also be evaluated in light of several other factors to determine whether its exercise would comport with "fair play and substantial justice."[29] These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute.[30]

In this case, the Plaintiff, was injured by the intentional false defamatory speech of non-

---

special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents.
[24] See *Licciardello v. Lovelady,* 544 F.3d 1280, 1285 (11th Cir. 2008).
[25] *Id.* (quoting *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995)).
[26] *Id. (*citing *Ziegler v. Indian River County*, 64 F.3d 470, 474).
[27] *Bancroft Masters, Inc. v. Augusta National Inc*., 223 F.3d 1082, 1087 (9th Cir. 2000) When the nonresident defendant targets a forum resident and injures him there, the court held, the defendant cannot complain when he is haled into court there.
[28] *Licciardello v. Lovelady,* 544 F.3d 1280, 1285 (11th Cir. 2008)(internal quotations omitted).
[29] *International Shoe,* 326 U.S. at 320, 66 S.Ct. 154.
[30] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

resident Almazan, which Almazan expressly aimed at the Plaintiff as evidenced by the extortionate threatening email and among the other allegations in the Complaint, *is not required to travel to the nonresident's state of residence to obtain a remedy*.[31] The Supreme Court in *Calder* made clear that "[a]n individual injured in [Florida] need not go to [Almazan's home state] to seek redress from [Defendant Almazan who, though resides in Missouri], knowingly cause the injury in [Florida]."[32]

Additionally, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida.[33] The United States Constitution is not offended by Florida's assertion of its jurisdiction over such nonresident intentional tortfeasors such as Defendant Almazan.[34]  For these reasons, this Court should deny Defendant Almazan's Motion to Dismiss based on lack of Personal Jurisdiction.

      **B.**      **The Plaintiff's Defamation Claims Should Not Be Dismissed**

In the Motion to Dismiss, Defendant Almazan argues that the Plaintiff's Claim of Defamation is "legally insufficient."[35]  However, Almazan does not assert that the Complaint fails to state a cause of action against Almazan for Defamation, rather, Defendant requests this Court to take judicial notice of a matter outside the pleadings (the definition of "hazing," which Almazan does not even define in the instant Motion to Dismiss) and make a final determination of whether the *facts asserted in the complaint can be proven*, "[b]ased on the facts plead and the *definition of hazing* Plaintiff *cannot prove factually* that the Defendant was not uncomfortable, or perceived that hazing was occurring under the circumstances that he plead."[36]  The Defendant then cites to *Church of Scientology Int'l v. Time Warner*, 806 F. Supp. 1157 (S.D.N.Y. 1992), stating the standard for this Court that the "motion tests the feasibility of the claim presented."[37] Defendant's application of this standard to dismiss a complaint based on the "feasibility on the facts" is inaccurate.  In *Church of Scientology*, the Court discussed the standard governing dismissal under FRCP 12(b)(6) and, citing *Conley v. Gibson,* 355 U.S. 41, 45-46, (1957),

---

[31] *Licciardello v. Lovelady,* 544 F.3d 1280, 1286.
[32] 465 U.S. at 1487, 104 S.Ct. 1401.
[33] *Licciardello v. Lovelady,* 544 F.3d 1280, 1288 (11th Cir. 2008)(internal citations omitted).
[34] *Calder*, 465 U.S. at 791.
[35] Almazan MTD Doc. 14, p. 4.
[36] Almazan MTD Doc. 14, p. 4; See also page 5, ("The pleadings detailing the event show there is no *feasible way to prove the claim against the Defendant*").
[37] *Id.*

9

explained the *standard* that a motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can *prove no set of facts in support of his claim which would entitle him to relief*."[38]

However, Fifty years later, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court retired the "no set of facts" standard set forth in *Conley v. Gibson* and installed a "plausibility" standard and held that the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[39] The facts are not merely "conceivable," but "plausible" and there are "enough facts to raise a *reasonable expectation that discovery will reveal evidence* of [a claim]."[40]

As stated above, a Motion to Dismiss tests the legal sufficiency of a complaint and requires that the Court construe the complaint liberally, assuming all facts contained within the allegations are true, and drawing reasonable inferences in favor of the Plaintiff.[41]  A complaint *should never be dismissed because the court is doubtful that the plaintiff will be able to prove all of the factual allegations*.[42]

> 1. **Defendant Almazan's False Accusations made with Express Malice to Injure Plaintiff were not protected speech under the Qualified Privilege Doctrine**

Defendant Almazan asserts the affirmative defenses that he enjoyed a "qualified privilege" and that his alleged defamatory statement was "an opinion" and therefore non-actionable.[43]  If a defendant raises an affirmative defense in a motion to dismiss, the defense must appear on the face of the complaint.[44]   The plaintiff does not have the burden of anticipating a defense and then overcoming it in his initial pleading.[45] "Furthermore the burden is

---

[38] *Church of Scientology Int'l*, 806 F. Supp. at 1162.
[39] *Twombly*, 550 U.S. 544, 558.
[40] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556.
[41] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-557 (2007)); *Resnick v. AvMed, Inc*., 693 F.3d 1317, 1325-26 (11th Cir. 2012).
[42] *Twombly, 550 U.S.* at 556-557 ("a well-pleaded complaint may proceed *even if it strikes a savvy judge that actual proof of the facts alleged is improbable*, and that a recovery is very remote and unlikely)(internal quotations omitted).
[43] Almazan MTD Doc. 14, p. 4.
[44] See *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA,* 467 F.3d 466, 470 (5th Cir. 2006) ("dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense[] [if] that defense . . . appear[s] on the face of the complaint"); *See also* Fla. R. Civ. P. 1.110(d) which provides a catch-all for affirmative defenses appearing "on the face" of a pleading may be raised in a motion to dismiss under Rule 1.140(b).
[45] See *Legrande v. Emmanuel*, 889 So. 2d 991 (Fla. 3d DCA 2004)(citing Hough v. Menses, 95 So.2d 410, 412 (Fla. 1957)).

on the defendant to prove his affirmative defenses, which cannot be done in proceedings on a motion to dismiss."[46]

To avail oneself of a qualified privilege, the statement must have been made in good faith, that is, with **good motive and not for the purpose of harming the subject of the defamation**.[47] In *Nodar v. Galbreath*, the Florida Supreme Court explained qualified privilege under the common law and its application:

> One who publishes defamatory matter concerning another is not liable for the publication if (a) the matter is published upon an occasion that makes it conditionally privileged and **(b) the privilege is not abused**. […]. A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation.[48]

The *Nodar* court explained where this qualified privilege **can be destroyed**:

> Where a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was **express malice and the privilege is destroyed**. Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position "to gratify his malevolence."[49]

Defendant cites *Fridovich v. Fridovich* and contends that the act of reporting a violation and any comments made to individuals investigating the violation are protected speech.[50] In *Fridovich* the Florida Supreme Court applied the doctrine for a "qualified privilege" instead of absolute privilege to the reporting of criminal activity to law enforcement or other investigative authority.[51] The Court considered the balance of society and an individual's interests and agreed with the proposition that a qualified privilege "is sufficiently protective of [those] wishing to report events concerning crime and balances society's interest in detecting and prosecuting crime with a defendant's *interest not to be falsely accused*."[52] The Court stated that in balancing of

---

[46] See *Id. (*citing *Hough v. Menses*, 95 So.2d 410, 412 (Fla. 1957)).
[47] *Hildago v. Kugel Designs, Inc.*, 509 F. Supp.2d 1247, 1265 (S.D. Fla. 2007) (quoting *Lewis v. Evans*, 406 So.2d 489, 492 (Fla. 2d DCA 1981)).
[48] *Nodar v. Galbreath,* 462 So.2d 803, 809 (Fla. 1984).
[49] *Nodar v. Galbreath,* 462 So.2d 803, 809 (Fla. 1984).
[50] *Fridovich v. Fridovich,* 598 So.2d 65 (Fla. 1992).
[51] *Id.*
[52] *Id.* at 69.

interests *that there is no benefit to society or the administration of justice in protecting those who make intentionally false and malicious defamatory statements to the police [or other investigating authority]."*[53] The Court held:

> The countervailing harm caused by the malicious destruction of another's reputation *by false accusation can have irreparable consequences.* We believe the law should provide a remedy in situations such as this. We thus hold, as a majority of the other states have held in this context, that defamatory statements *voluntarily made by private individuals to the police or the state's attorney prior to the institution of criminal charges are presumptively qualifiedly privileged*.[54]

The facts alleged in this case, if proven, would be sufficient to satisfy this presumption.[55] To overcome this presumption of a qualified privilege, the burden of proof is on the Plaintiff to establish "by preponderance of the evidence that the defamatory statements were false and uttered with common law express malice-i.e., that the defendant's primary motive in making the statements *was the intent to injure the reputation of the plaintiff*."[56]

### 2. Express Malice as Evidenced by the Facts Alleged in Complaint in which the Defamatory Statements were Made Vitiate any Qualified Privilege Almazan Purports to Enjoy

Proof of express malice may be established indirectly, i.e., "by proving a series of acts which, in their context or in light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive."[57]

Taking all facts asserted in the Complaint and Exhibits as true and all inferences in favor of the Plaintiff, it is clear, that Defendant Almazan had express malice and ill motive to assert his false accusations.[58] Defendant Almazan had animosity and was disgruntled because he did not want to pay his dues to the fraternity and he took his ill will out on Plaintiff.

Express malice that can vitiate the qualified privilege is evidenced by the circumstances

---

[53] *Fridovich,* at 69 (emphasis added).
[54] *Id.* (emphasis added).
[55] *Id.*
[56] *Id.* (citing *Nodar v. Galbreath*, 462 So.2d 803, 806 (Fla.1984)).
[57] *Corporate Financial, Inc. v. Principal Life Ins. Co*., 461 F.Supp.2d 1274 (2006)(citing *McCurdy v. Collis,* 508 So.2d 380, 382 (Fla. 1st DCA 1987)); accord *Southern Bell Telephone & Telegraph Co. v. Roper,* 482 So.2d 538, 539 (Fla. 3d DCA 1986)).
[58] See *Iqbal*, 556 U.S. at 678; *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true").

in which the defamatory statements are made. Federal and Florida courts have held that circumstances in fact such as the temporal proximity of events, the language utilized in the speech, unreasonableness of the speaker's actions and statements, and animosity held by the speaker, can demonstrate express malice. For example in *Thomas v. Tampa Bay Downs, Inc.*, the Second District of the Florida Court of Appeal assessed whether an alleged defamatory statement would be protected speech under the common law qualified privilege and opined that express malice "*may be inferred by the language utilized in the communication.*"[59] The *Thomas* Court reversed the lower courts' granting of summary judgment and reasoned: "[w]e cannot conclude that the manner and mode of Mr. Kibbey's alleged communication [as pleaded in the amended complaint] to Mr. Bilodeau *excludes the possibility that the primary motive for the statement was to injure Appellant*."[60]

In *Randolph v. Beer*, alleged defamatory statements were made concerning the operation of a credit union.[61] Evidence suggesting malice included that the defendant was the source of a kickback rumor concerning the plaintiff and that there was "*contemporaneous ongoing animosity*" between the parties about the credit union's operation.[62] Similarly, in *American Ideal Management v. Dale Village*, "the existence of express malice was based on conduct surrounding termination of the plaintiff's management contract."[63] There was evidence that the reasons given for the termination were manufactured after the fact; thus, the expressions of malice were made closely in time to the contract's termination.[64]

Other courts have agreed that proof of malice can include evidence of the *unreasonableness* of the defamer's actions and statements.[65] In *Asinmaz v. Semrau*, the Florida Fourth District Court of Appeals stated that proof of malice in fact involves evidence from which

---

[59] *Thomas*, 761 So.2d 401 (2000)(emphasis added).
[60] *Id*.(emphasis added)
[61] *Randolph v. Beer*, 695 So.2d 401 (Fla. 5th DCA 1997)(Reversing the trial court's determination that there was insufficient evidence to show malice that could dissolve qualified immunity and remanding for new trial "[t]here *was evidence of great animosity* between Beer and Hudek. If the jury believed that Dunlap was not the source of the rumor, […], *the jury could conclude that Beer concocted the story to satisfy his animosity against Hudek*")(emphasis added).
[62] *Id.* (emphasis added).
[63]*American Ideal Management v. Dale Village,* 567 So.2d 497, 500 (Fla. 4th DCA 1990)(Denying summary judgment due to dispute of material fact: "[t]he parties hotly contest whether or not the statements were made with express malice. Appellant claims that all the reasons given for the termination of the management contract were false and a sham; that the minutes of the board meeting do not reveal any reasons for the firing; *that the reasons were manufactured at a later time in order to afford false justification for the termination*, and that one of the allegations inferred criminal wrongdoing on the part of appellant")(emphasis added).
[64] *Id*.
[65] *Asinmaz v. Semrau*, 42 So.3d 955 (2010).

the trier of fact could conclude that the challenged statement was motivated by ill will and the desire to harm.[66] The Court explained how this proof of express malice can be established indirectly, i.e., "by proving a series of acts which, in their context or in light of the totality of surrounding circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive."[67]

The sequence of events shows bad faith, ill will, and bad motive. Almazan sent the extortionate email immediately after A.J.'s request for the dues, in close temporal proximity of the false reporting.[68] Defendant Almazan's actions as to why he chose to, after six months of the September event, but remarkably within days or less, of being asked to pay his Fraternity dues, falsely report to Pi Kappa Phi of alleged hazing that involved Plaintiff were "inconsistent with the premise of a reasonable man pursuing a lawful objective."[69] The Plaintiff provides sufficient evidence of express malice of the context of the facts as well as in light of the totality of the circumstances to vitiate any defense of qualified privilege.

### 3. Almazan's Unprivileged Defamatory Statements Were Not Opinions and Are Actionable as a Matter of Law.

Defendant Almazan also asserts an affirmative defense that his alleged defamatory statement was "an opinion" and therefore non-actionable.[70] Defendant then purports a new unsubstantiated fact that the "facts of the party were commonly known by *all* who attended."[71] This is contrary to what has been presented in the Complaint and its exhibits which include eleven sworn statements attesting that no conduct of hazing occurred at the bid party.[72]

Defendant relies on *Hay v. Independent Newspapers, Inc.* and on *Sirpal v. Univ. of Miami* for this proposition that reporting an opinion of an event are not facts and therefore it does not matter whether false or not, the statement is not actionable.[73] However, in *Hay*, the alleged

---

[66] *Id.* at 958
[67] *Id.* at 958
[68] *Thomas v. Tampa Bay Downs, Inc.*, 761 So.2d 401 (2000)("Appellant would have to provide evidence of express malice ***in closer temporal proximity to overcome the presumption of good faith*** attaching to the qualified privilege").
[69] *Asinmaz*, 42 So.3d at 958.
[70] Almazan MTD Doc. 14, p. 6.
[71] Almazan MTD Doc. 14, p. 6.
[72] Exhibit 8.
[73] In *Sirpal v. Univ. of Miami*, 2011 U.S. Dist. LEXIS 80908 (S.D. Fla. 2011), the facts nor the court's opinion speak to any protection of opinion speech so Plaintiff is at a loss as to the purpose of the citation and cannot brief on this

14

defamatory statement was a letter written to the editor published in a Independent Newspaper opining that Hay, whose charges of criminal acts were dropped, was a "crook."[74] The court ruled the trial court properly dismissed the complaint because the alleged libelous language was an "expression of unactionable opinion."[75]

The facts in *Hay* are not on point to the facts and allegations in this case.[76] Defendant Almazan did not write a letter to any editor and express an opinion. Almazan reported unsubstantiated allegations of hazing activity to the Pi Kappa Phi six months after the alleged event with express malice of ill will and bad motives such as in retaliation for having to pay his dues. This false reporting was not an "unactionable opinion."

Even if this Court would abstractly consider that Defendant had no ill intentions and that at the time believed he was a victim of hazing, evidence of express malice, as sufficiently alleged in the complaint can be shown by the unreasonableness of the accusation from the lack of "no discernible reason" to accuse Plaintiff A.J. of any misconduct.[77] In *Asinmaz v. Semrau*, Appellant Asinmaz is a jeweler who owned a store in Boca Raton.[78] Semrau took her diamond ring to him to be repaired and later accused Asinmaz of replacing her diamonds with cubic zirconias.[79] Appellant vehemently denied the accusation, however, Semrau filed a police report accusing Asinmaz of replacing her diamonds with the artificial stones anyway.[80] The police contacted Semrau days later and she informed them that the diamonds in the ring ***were not swapped*** but were the original diamonds.[81] In the meantime, however, a newspaper had published Semrau's accusation, and as a result, Asinmaz lost all of his business and was forced to close his store.[82] Asinmaz alleged in his complaint that Semrau had accused him "***for no discernible reason***" of replacing the diamonds and could not be convinced otherwise.[83] The trial court granted summary judgment in favor of Semrau and awarded her attorneys fees, concluding that "there was no evidence of express malice, which was required in order to negate the

---

case in the memorandum.
[74] *Hay v. Independent Newspapers, Inc.,* 450 So.2d 293 (Fla. Dist. Ct. App. 1984).
[75] *Hay*, at 295.
[76] *Id.*
[77] *Asinmaz v. Semrau,* 42 So.3d 955 (2010).
[78] *Id*.
[79] *Id*., at 957.
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] *Id.*

qualified privilege."[84]  Asinmaz appealed the award of attorney's fees and argued his claim for defamation was not frivolous but based on a "justiciable issue of fact."[85]  The Fourth District of Florida Court of Appeals held that the defamation action against Semrau was not frivolous therefore she was not entitled to award of attorney fees.[86]

The *Asinmaz* Court explained that express malice may be inferred from the **unreasonableness of Semrau's conduct** in accusing Asinmaz of stealing her diamonds and then, without ever investigating something over which she had absolutely no expertise, filing a report with the police.[87]  The Court noted that at the time she filed the report accusing Asinmaz of theft, she was aware that she **did not actually know whether her accusation was true**, as she intended to send her ring to the original jeweler to ascertain whether the diamonds had been switched.[88] The Court speculated as to the malice, based on the facts, that it can be a **reasonable inference that she intended to harm Asinmaz** by getting the police involved, "perhaps because of their heated exchange the day before."[89] Semrau's later recanting of the crime "becomes part of the totality of circumstances" from which a jury may determine whether she acted with malice.[90]

The facts in *Asinmaz* are analogous to this case.  Assessing the totality of circumstances, there was no discernible reason for Defendant Almazan to accuse Plaintiff A.J. of engaging in hazing activity.  A reasonable inference can be made that Almazan **intended to hurt** Plaintiff by getting the Fraternity and FAU involved because of Almazan's ill motive and feelings that he did not think he should pay his Fraternity dues.

What Defendant's questionable defense illustrates is that there clearly are disputed facts in this case which make the Motion to Dismiss premature.  Almazan is now recanting that any hazing activity happened as a matter of fact and is now asserting the accusations were "his opinion that he was being pressured by group action."[91] Based on the facts asserted in the eleven sworn affidavits and the Plaintiff's Verified Complaint, there was no "group action" pressuring any member of the Fraternity at the bid party.

---

[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.,* at 959.
[91] *Id.*

16

### *4.    Defendant Almazan's Motion to Dismiss is Premature*

Plaintiff's claims for defamation may be defeated by qualified privilege, however as shown by circumstantial evidence of express malice, any qualified privilege can be overcome depending on the factual circumstances.[92] Furthermore, it is only where the circumstances surrounding a defamatory statement are "undisputed, or are so clear under the evidence as to be unquestionable," that the question of privilege becomes a question of law rather than fact.[93]

On Defendant Almazan's motion to dismiss, this Court can hardly find that all the circumstances surrounding the alleged defamatory communications and express malice are undisputed, particularly where Defendant Almazan relies on new facts asserted in his own Motion. Even if qualified privilege was established, Plaintiff A.J. must be given the opportunity to prove Defendants' malice.[94]

### C.    The Tortious actions of the Defendant Almazan negatively impacted the Plaintiff, and caused Emotional Distress, the level to which the Plaintiff was impacted is a Question of Fact.

The very fact that the Defendant seeks to align their behavior with that of "mere insults, threats, or false accusations" is on its face repulsive. The Defendant rightly outlines the law in this area and we reiterate it here: "Liability is found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."

In the case at hand, a National Organization committed to the growth and expansion of leadership and brotherhood made the affirmative decision to destroy the aspirations of a committed and successful member of their organization for their own purposes. These purposes clearly involved the rapid and immediate deflection of attention away from themselves and the protection of their public image. They chose to destroy the hard fought efforts of a young man to accomplish a position of stature and leadership within the Florida Atlantic Community, rather than stand by their own principles. This was accomplished purposely, and with malice, and the events speak for themselves; the elimination of two leadership positions; a lifelong record of probation during college; the entrance of the young man into a therapeutic remedy, as well as,

---

[92] See *Nodar*, 462 So. 2d at 809 ("[T]he mode, manner, or purpose of the communication would go to the question of abuse or forfeiture of the privilege").
[93] *Id*. at 810.
[94] *Id*. at 811.

the emotional damage of having been expelled from his social community.

The trier of fact determines whether or not the actions and consequences rise to the level of severe and outrageous conduct outlined by the Defendant.

### D.  Plaintiff Did Not Bring This Action against Almazan, on Behalf of Pi Kappa Phi, for Almazan's Intentional Torts Which Caused Injuries to Plaintiff

Defendant Almazan asserts yet another new fact not contained in the Complaint that his alleged defamatory false reporting to the Fraternity and to FAU that there was "hazing" at a party six months prior was "directed toward the Fraternal Organization" itself."[95]  Defendant makes an interesting and bold assumption that the fact that this false reporting resulted in a University and fraternity inquiry was "*simply a* consequence of a reported infraction."[96]  Almazan then argues this Court should grant his Motion to Dismiss in its entirety because Plaintiff does not have standing to sue "*for* the Fraternity" in this Action.[97]  Almazan relies on *Alexis v. Williams* for the proposition that allegations towards a group "are not actionable by an individual" under the Group Defamation Doctrine.[98]

However it appears Almazan has missed the point of Plaintiff's claims "are against" Pi Kappa Phi, Angotti and Leighty, not "*for*," the Pi Kappa Phi.  Almazan also missed the point of the court's explanation of the "group defamation doctrine" and ruling in *Alexis v. Williams*.[99] *Alexis v. Williams* was about an alleged defamatory comment made *towards a group*.[100] The issue before the court was whether an unnamed member of a group has a clearly established right not to have the group disparaged.  The court then explained the "group defamation doctrine and its application to a member's standing to sue:

> Defamation is personal; a plaintiff who alleges defamation "must show that [the allegedly defamatory] statement was published `of and concerning' him" Allegations of defamation by an organization or group and its members are not interchangeable. Statements which refer to an organization or group do not necessarily implicate its members. For this reason, a defamatory statement *directed at a group or class does not generally give rise to a cause of action on behalf of its individual members*. *Under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the*

---

[95] Almazan MTD Doc. 14, p. 8.
[96] Almazan MTD Doc. 14, p. 8.
[97] *Id.*
[98] *Alexis v. Williams* 77 F. Supp. 2d 35 (D.D.C. 1999)(quoting *Church of Scientology Int'l v. Time Warner,* 806 F. Supp. 1157 (S.D.N.Y. 1992)).
[99] *Id.* at 40.
[100] *Id.*.

18

*plaintiff solely as a member of a group*. […]. This is the "group defamation" doctrine.[101]

Plaintiff has not brought this action as a member of Pi Kappa Psi "for" or on behalf of the Fraternity. The defamatory statements made by Almazan were false accusations "of and concerning" the Plaintiff and made with the intent to injure the Plaintiff.  Under the facts of this case, Plaintiff's claims do not fall under the "group defamation doctrine."   Because, EVEN IF, this Court were to entertain Almazan's defensive position that Almazan's defamatory false statements were about or were concerning the Fraternity, Almazan *still specifically pointed to and falsely accused Plaintiff*.   These facts are distinguishable to statements which refer to an organization or group and reference a member "solely as a member of a group."[102]   The *Alexis* Court stated, "[I]f defamatory language is used broadly concerning the members of a large class or group, *absent other circumstances specifically pointing to a particular member,* no member has a right of action for libel or slander."[103] Therefore, as explained by the *Alexis* court, the Plaintiff indeed has a right of action for libel or slander against Almazan.[104]

### E.   Florida Atlantic University is not an Indispensible Party under Rule 19

Defendant asserts another reason this Court should grant his Motion in its entirety because Plaintiff has "not named the University" in this Action.[105]  Although not briefed or cited with any authority, Plaintiff is assuming Almazan is arguing that this Court should grant the Motion to Dismiss because of Plaintiff's alleged failure to join FAU under Rule 19.[106]

Fed. R. Civ. P. 19 establishes a two-step inquiry to determine whether FAU is an indispensable party to Plaintiff's actions against the named Defendants. First, under Rule 19(a), the court asks whether FAU is a party "to be joined if feasible," i.e. whether it is a "necessary party" to the litigation.[107]   A party is deemed necessary under Rule 19(a) (1) if: (1) its absence will prevent the court from granting complete relief to the existing parties, or (2) the party claims an interest relating to the subject matter of the action […].[108]

---

[101] *Id*. (internal citations omitted)(emphasis added).
[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] Almazan MTD Doc. 14, p. 9.
[106] Fed. R. Civ. P. 12(b)(7) failure to join a party under Rule 19.
[107] *Id.*
[108] *See* Fed. R. Civ. P. 19(a) (1).

FAU is not a necessary party as its absence will not prevent this Court from granting relief to the existing parties and according to the facts alleged in the Complaint there are no interests the subject matter of the allegations of defamation, IIED, and breach of contract, against the named Defendants that FAU may claim.  Plaintiff did not allege in the facts that FAU published any defamatory statements against Plaintiff.  FAU was the recipient of false defamatory accusations made with express malice by the Defendants. Without going through a "quasi-judicial" process, as Defendant Almazan has incorrectly asserted as a fact outside the Complaint in his Motion to Dismiss,[109] Plaintiff A.J. and FAU settled the matter without any conclusions of wrongdoing on behalf of the Plaintiff.[110]

### IV.     CONCLUSION

Defendant Almazan' Motion to Dismiss Count I, Defamation and Count II, Intentional Infliction of Emotional Distress relies on Affirmative Defenses and Defendant's own proffer of facts in the Motion, which are clearly beyond the four corners of the Complaint.  There are issues involving questions of fact, and dismissal at this stage is premature.

Therefore Plaintiff respectfully requests that this Court Deny Defendant Almazan's Motion to Dismiss.

Dated:  December 19, 2015                                                         Respectfully submitted,

  /s/Angelo A. Gasparri
Angelo A. Gasparri, Esq.
1080 S. Federal Highway
Boynton Beach, Fl. 33435
Phone: 561-826-8986
Fax:  561-935-9706

---

[109] See MTD page 4 "Both FAU and the National PiKapp organization conducted ***quasi judicial fact finding unfavorable to the Plaintiff concerning the events of the party***."
[110] Comp. ¶ 93.