UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-81400-CIV-MARRA

ANGELO JOSEPH GASPARRI,

Plaintiff,

vs.

ERIC J. ALMAZAN,
PI KAPPA PHI FRATERNITY,
JUSTIN ANGOTTI, and
SCOTT LEIGHTY,

Defendants.
_____/

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

This cause is before the Court upon Defendants Pi Kappa Phi Fraternity and Justin Angotti's Motion to Dismiss (DE 13) and Defendant Eric J. Almazan's Motion to Dismiss (DE 14). The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I.  Background

On October 9, 2015, Plaintiff Angelo Joseph Gasparri ("Plaintiff" "Gasparri") filed a six-count Complaint (DE 1) against Defendants Eric J. Almazan ("Almazan"), Pi Kappa Phi Fraternity ("the Fraternity"), Justin Angotti ("Angotti") and Scott Leighty ("Leighty") (collectively, "Defendants").  Plaintiff has brought claims for defamation against all Defendants (counts one and three); intentional infliction of emotional distress against all Defendants (counts two and four); breach of contract against the Fraternity (count five) and negligence against the Fraternity (count six).

According to the Complaint, Plaintiff played a substantial role in efforts to establish the Fraternity at Florida Atlantic University ("FAU"). (Compl. ¶ 2.)  The Fraternity began recruiting members at FAU and founded a chapter in the Fall of 2013. (Compl. ¶ 14.)  Plaintiff was elected to the non-executive board position of recruitment chair. (Compl. ¶ 16.)  After a football game was played at FAU, an informal gathering was held at the residence of Harry Weiss. (Compl. ¶ 22.)  The event was not sponsored by the Fraternity, but a large number of Fraternity members attended. (Compl. ¶¶ 23, 25.)  During the gathering, Plaintiff and other members of the Fraternity would mark students who were not old enough to drink on the hand to signal to others not to serve these individuals alcohol. (Compl. ¶ 25.)  At approximately midnight, Kyle Muir, the new member educator for the Fraternity, called members into a meeting in the garage of the building. (Compl. ¶¶ 26-28.)  At some point, Plaintiff was invited to speak, unbeknownst to Plaintiff, a bottle of whiskey was present in the garage at the time of the meeting. (Compl. ¶¶ 31, 32.)  No individuals had their movement restricted in any way during the speech and no hazing occurred. (Compl. ¶ 34.)

On November 2, 2014, Plaintiff was elected President of the Fraternity at FAU. (Compl. ¶ 44.)  As part of this role, Plaintiff attended mandatory training hosted by the Fraternity. (Compl. ¶ 45.)  At the training, Plaintiff learned that if any issues arose in relation to the chapter, Plaintiff and the chapter would be provided with support from the national organization. (Compl. ¶ 47.)

On or about February 24, 2015, Plaintiff and the treasurer of the Fraternity sent emails to members of the Fraternity who had left the chapter but still owed fees. (Compl. ¶ 50.) Almazan responded with an email stating that he was disputing the fee, that he was never initiated into the Fraternity and that he withdrew from FAU. (Compl. ¶ 51.)  Plaintiff told Almazan that he was

part of the organization for one semester and needed to pay his dues. (Compl. ¶ 52.)  Almazan responded that he was going to contact the authorities at FAU to inform them about hazing. (Compl. ¶ 53.)  Plaintiff contacted advisors to the Fraternity, who told him not to take any actions at this point. (Compl. ¶ 57.)  At some point between February 25 and March 6, 2015, Almazan made statements to the Fraternity and FAU that there was forced drinking, physical confinement and hazing at the aforementioned party.  (Compl. ¶¶ 59-63.)

A few weeks later, Plaintiff received a telephone call from Leighty, the Fraternity's director of chapter development, who asked him questions about the party. (Compl. ¶¶ 64-67.) At one point Plaintiff tried calling the national president of the Fraternity, but the call was disconnected. (Compl. ¶ 71.)  Eventually, Plaintiff held a conference call with Leighty and Angotti, the assistant executive director of education and accountability at the Fraternity. (Compl. ¶ 75.)  Angotti directed accusations at Plaintiff and informed him that his membership in the Fraternity had been revoked. (Compl. ¶ 76.)  This meeting was followed by an email on March 15, 2015 from Angotti to members of the Fraternity at FAU which falsely placed blame on Plaintiff for forcing members to consume liquor, and accused Plaintiff of making false statements concerning the incident. (Compl. ¶ 82-86.)   Angotti and the Fraternity sought to "scapegoat" Plaintiff and avoid a true inquiry into the matter.  (Compl. ¶ 119.)  Further, the statements were designed to impact Plaintiff's personal and professional reputation negatively.[1] (Compl. ¶ 121.)

Eventually, FAU filed charges against Plaintiff for violations of the FAU code of conduct. (Compl. ¶ 90.)  Plaintiff and his attorney negotiated a settlement with FAU which

---

[1] Plaintiff makes the same allegation against Almazan. (Compl. ¶ 110.)

3

included two years of probation, 25 hours of community service, completion of an ethics seminar and payment of a $100.00 fee. (Compl. ¶ 94.) Plaintiff was removed as house speaker of the FAU Boca Raton House of Representatives due to his probation. (Compl. ¶¶ 95-96.) Plaintiff was not reimbursed for a $1,000.00 loan he made to the Fraternity and he spent $7,000.00 defending himself against the accusations made by Almazan and the Fraternity. (Compl. ¶¶ 97-98.)

Defendants Angotti and the Fraternity move to dismiss on the following grounds: (1) counts three and four improperly commingle multiple defendants; (2) the Complaint fails to distinguish and attribute the alleged defamatory statements to each defendant; (3) the defendants enjoy a qualified privilege; (4) the Complaint fails to establish the requisite level of extreme and outrageous conduct for an intentional infliction of emotional distress claim; (5) there are no allegations to support the formation of a contract and (6) the Fraternity's internal policies do not define the scope of duty for a negligence claim.

Defendant Almazan moves to dismiss on the following grounds: (1) based on facts pled, Plaintiff cannot prove that Almazan did not perceive that hazing was occurring; (2) Almazan is entitled to immunity because his comments were made during an investigation; (3) the Complaint fails to establish the requisite level of extreme and outrageous conduct for an intentional infliction of emotional distress claim; (4) Almazan's statements were pure opinion; (5) the case should be dismissed for lack of personal jurisdiction and (6) Plaintiff lacks standing.

II. Motions to Dismiss Pursuant to Rule 12(b)6)

A. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### B. Defamation Claims[2]

Under Florida law, to state a claim for defamation, a plaintiff must allege that 1) the defendant published a false statement, 2) about the plaintiff, 3) to a third party, and 4) that the falsity of the statement caused injury to the plaintiff.  Valencia v. Citibank International, 728 So.

---

[2] In a diversity case, the Court applies Florida law. See Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132–33 (11th Cir. 2010); Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001).

2d 330, 330 (Fla. Dist. Ct. App. 1999).

While pleading a defamation claim with a certain level of particularity may be required under Florida law, see, e.g., Razner v. Wellington Regional Medical Center, Inc., 837 So.2d 437, 442 (Fla. Dist. Ct. App. 2002), this requirement is procedural and not applicable in this Court. See In re Prudential of Florida Leasing, Inc., 478 F.3d 1291, 1299 (11th Cir. 2007) ("State law ordinarily does not govern the procedure of federal courts."). Federal Rule of Civil Procedure 9(b) only requires specific pleading in limited circumstances, and a state law defamation claim is not one of those enumerated circumstances. Fed. R. Civ. P. 9(b). Thus, in federal court, a defamation claim can be pled generally, so long as it meets the requirements of Rule 8(a) and Twombly. See Michel v. NYP Holdings, Inc., — F.3d —, 2016 WL 860647, at * 11 (11th Cir. Mar. 16, 2016).

Plaintiff has alleged that Angotti, acting on behalf of the Fraternity, sent an email to members of the Fraternity on March 15, 2015, falsely stating that the newest members of the Fraternity were encouraged or forced to consume liquor, falsely stating that Plaintiff was one of the individuals who led that activity and falsely stating that Plaintiff was untruthful in denying involvement in this activity. (Compl. ¶¶ 82-87.) These allegations are sufficient to plead a defamation claim. Nonetheless, Defendants Angotti and the Fraternity counter that Plaintiff's allegations are not sufficiently specific. However, as the Court has stated, federal courts do not require Plaintiff to allege his defamation claim with the same particularity as required in Florida courts. The factual allegations in the Complaint are sufficient to meet the requirements of Rule 8(a) and Twombly- these Defendants clearly have notice of the basic facts and the crux of Plaintiff's grievances. Further, the Court finds the Complaint does not improperly commingle the

various defendants within counts three and four. Read as a whole, the Complaint properly identifies which statements are attributed to which Defendants. Dismissal of the action on these grounds is therefore unwarranted.[3]

Defendants Angotti and the Fraternity then argue that the statements in the March 15, 2015 email were privileged because they related to the qualifications of Plaintiff and the disciplinary action against him. A privilege only exists when five specific elements are met: 1) the statement was made in good faith; 2) the speaker had a duty to speak or an interest in the subject matter of the statement; 3) the listener had a duty or an interest in receiving this information; 4) the statement was made on a proper occasion; and 5) the statement was published in a proper manner. American Ideal Management, Inc. v. Dale Village, Inc., 567 So.2d 497, 499 (Fla. Dist. Ct. App. 1990).

When presented with an affirmative defense in a motion to dismiss, a court can only dismiss a complaint under Rule 12(b)(6) "when its allegations - on their face - show that an affirmative defense bars recovery on the claim." Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001). In this case, the Court cannot conclude that the Complaint on its face is defeated by the qualified privilege. Plaintiff has alleged that Defendants Angotti and the Fraternity did not make the statement in "good faith," but to scapegoat Plaintiff and avoid a true inquiry into the matter. (Compl. ¶ 119.) Accepting this allegation as true, the privilege would

---

[3] The Court finds Defendants' reliance on Loeb v. Geronemus, 66 So. 2d 241 (Fla. 1953) unhelpful. There, the Florida Supreme Court found that a letter stating that the plaintiff was expelled from a religious group was not libelous, but simply a publication of disciplinary action. Id. at 244. Whether or not the March 5, 2015 email was a publication of a disciplinary action as opposed to libelous in nature cannot be determined at this stage.

7

not apply. Further, the qualified privilege does not apply when a defendant makes the false statement with "express malice," in other words, where the statement is made with "an intention to injure the plaintiff." Nodar v. Galbreath, 462 So.2d 803, 810 (Fla. Dist. Ct. App. 1984). Plaintiff pled that these statements were "designed to negatively impact [Plaintiff's] personal and professional reputation as well as his standing in the school." (Compl. ¶ 121.)  As Plaintiff pled express malice, the privilege would not apply to the facts as alleged on the face of the Complaint. For these reasons, the Court will not dismiss the defamation count against Angotti and the Fraternity.

The Court will now turn to the arguments of Defendant Almazan.  First, Almazan contends that that his statements were privileged.  The Court, however, adopts the reasoning set forth supra and concludes that Plaintiff has alleged that Almazan's statements were not made in good faith, but were in retaliation for Plaintiff seeking dues from Almazan. (Compl. ¶ 60.) Further, Plaintiff pled that these statements were "designed to negatively impact [Plaintiff's] personal and professional reputation as well as his standing in the school." (Compl. ¶ 110.) Hence, the Court finds that privilege is not a basis for dismissal at this stage of the proceeding.

Next, Almazan claims that his statements were opinions and Plaintiff cannot prove that Almazan was not uncomfortable or perceived that hazing was occurring under the circumstances pled.  The Complaint, however, pleads that no hazing occurred in the garage. (Compl. ¶ 34.)  At this stage in the proceeding, the Court must assume this to be true.  The defamation claims may proceed.

### C.  Claims for Intentional Infliction of Emotional Distress

Under Florida law, to state a cause of action for intentional infliction of emotional

8

distress, a complaint must allege four elements: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007). Whether conduct is outrageous enough to support a claim for intentional infliction of emotional distress is a question of law, not a question of fact. Id. at 595; see also Baker v. Florida Nat. Bank, 559 So. 2d 284, 287 (Fla. Dist. Ct. App. 1990) ("The issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress is a legal question in the first instance for the court to decide as a matter of law.").

> Behavior claimed to constitute the intentional infliction of emotional distress must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Ponton v. Scarfone, 468 So.2d 1009, 1011 (Fla. Dist. Ct. App. 1985) (quoting Metropolitan Life Ins. v. McCarson, 467 So.2d 277, 278 (Fla. 1985)). In applying that standard, the subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort of intentional infliction of emotional distress occurred. Id. Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is "atrocious, and utterly intolerable in a civilized community." Id. (quoting Metropolitan, 467 So.2d at 278).

Liberty Mut., 968 So.2d at 594-95.

The conduct alleged, if true, does not meet the standard of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Metropolitan, 467 So.2d at 278-79 (quoting Restatement (Second) of Torts § 46 (1965)). See e.g., Williams v. Southeast Florida Cable, Inc., 782 So.2d 988 (Fla. Dist. Ct. App. 2001) (holding trial court did not err in dismissing claim for intentional infliction of emotional distress where the alleged conduct did not

9

rise to the level of outrageousness required under Florida law). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Scheller v. Am. Med. Int'l, Inc., 502 So.2d 1268, 1271 (Fla. Dist. Ct. App. 1987) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

In so ruling, the Court rejects Plaintiff's contention that a trier of fact must determine whether the actions rise to the level of severe and outrageous conduct. As stated supra, this determination is one the Court must make as a matter of law and the Court finds that these allegations do not meet the standard for intentional infliction of emotional distress.

### D. Breach of Contract

The Fraternity seeks to dismiss the breach of contract claim on the lack of mutual assent. Plaintiff claims the parties were in a contract "to accomplish a common goal of chartering the chapter, recruit members, collect dues . . . and maintain finances." (DE 21 at 19.) The Complaint alleges that the Fraternity breached the contract "by failing to live up to the purposes and objectives promised at the training, published on their website and propagated." (Compl. ¶ 138.)

This argument can be compared to those claims in which employees contend that workplace manuals or rules of conduct give rise to an enforceable contract. The Florida courts have resoundingly rejected such arguments. See, e.g., Quaker Oats Co. v. Jewell, 818 So.2d 574, 576-78 (Fla. 5th DCA 2002); McConnell v. Eastern Air Lines, Inc., 499 So.2d 68, 69 (Fla. Dist. Ct. App. 1986). Likewise, the Court finds, as a matter of law, that the Complaint does not establish a claim for breach of contract.

### E. Negligence

The negligence claim can be dismissed on a similar basis. To establish a negligence

claim, Plaintiff must establish that the Fraternity had a legal duty to him.  United States v. Stevens, 994 So. 2d 1062, 1065-66 (Fla. 2008).  An organization's internal policies and procedures do not create a duty of care.  Warren v. K-Mart Corp., 765 So. 2d 235, 237 (Fla. Dist. Ct. App. 2000); Artigas v. Allstate Ins. Co., 541 So. 2d 739, 740 n.1 (Fla. Dist. Ct. App. 1989). For this reason, the Court dismisses the negligence claim.

　　　　III. Motion to Dismiss Pursuant to Rule 12(b)(2)

Defendant Almazan moves to dismiss the Complaint for lack of personal jurisdiction. Almazan notes that at the time of the alleged acts, he did not reside in Florida but "concedes" that long arm jurisdiction may be found when a non-resident makes a defamatory telephone call into the state.  (DE 14 at 7.)  Almazan makes a public policy argument; namely, that "the finding of jurisdiction would place a chilling effect on any lawful investigation."  In addition, Almazan contends that "Plaintiff should have to prove that calls were initiated by him, and not the other Defendants."  (Id.).

The Court begins by noting that the Complaint properly alleges personal jurisdiction over Almazan.  The Complaint alleges that Almazan is a resident of Kansas and has transmitted defamatory statements within Florida. (Compl. ¶¶ 8, 11.)   Transmitting defamatory statements constitute a tortious act which would may give rise to personal jurisdiction under the Florida long arm statute § 48.193(1).[4]  As noted by Almazan, defamation is a tort that can establish personal

---

[4] This provision provides:

　　A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

Case 9:15-cv-81400-KAM   Document 28   Entered on FLSD Docket 03/11/2016   Page 12 of 13

jurisdiction, even when made by an out-of-state defendant. See Internet Solutions Corp. v. Marshall, 39 So.3d 1201 (Fla. 2010); Acquadro v. Bergeron, 851 So.2d 665 (Fla. 2003); Wendt v. Horowitz, 822 So.2d 1252 (Fla. 2002). Likewise, minimum contacts may be established over a non-resident defendant who has no other contacts with the forum. Calder v. Jones, 465 U.S. 783, 790 (1984). Lastly, the Court finds that finding Almazan amenable to personal jurisdiction in Florida comports with "traditional notions of fair play and substantial justice." Cronin v. Washington Nat. Ins. Co., 980 F.2d 663, 671 (11th Cir.1993) (citing Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 113 (1987)).

Almazan's arguments to the contrary are unpersuasive. His policy argument is best left to the legislature and his argument that Plaintiff must prove Almazan made the telephone call cannot be resolved at the motion to dismiss stage. As such, the motion to dismiss for lack of personal jurisdiction is denied.[5]

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

---

. . .

2. Committing a tortious act within this state.

Florida Statute § 48.193(1)(a)(2).

[5] Almazan also contends that Plaintiff does not have standing to bring this action, claiming that Plaintiff "does not have standing to sue for the Fraternity and has not named the University." (DE 14 at 8.) Plaintiff, however, is seeking to sue the Fraternity, not sue on its behalf. To the extent that Almazan is seeking to characterize this claim as a group defamation claim, the Court does not read the Complaint that way. See generally Alexis v. District of Columbia, 77 F. Supp. 2d 35 (D.D.C. 1999) (discussing group defamation claims). Almazan does not cite any authority to support his position that FAU should have been named as a defendant and the Court does not see any basis for this position.

1) Defendants Pi Kappa Phi Fraternity and Justin Angotti's Motion to Dismiss (DE 13) is **GRANTED IN PART AND DENIED IN PART.**

2) Defendant Eric J. Almazan's Motion to Dismiss (DE 14) is **GRANTED IN PART AND DENIED IN PART.**

3) The Court finds that amending the claims for intentional infliction of emotional distress, breach of contract and negligence would be futile and these claims are dismissed with prejudice.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of March, 2016.

_____
KENNETH A. MARRA
United States District Judge